UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBIN WADE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | CASE NO. 2:15-CV-01540-DWC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's application for Supplemental Security Income ("SSI") benefits. The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 6.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred by failing to properly evaluate the opinions of one of Plaintiff's examining psychologists and one of Plaintiff's treating physicians. Therefore, this matter is reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings.

ORDER ON PLAINTIFF'S COMPLAINT - 1

**PROCEDURAL & FACTUAL HISTORY**

On September 7, 2012, Plaintiff filed an application for SSI. *See* Dkt. 11, Administrative Record ("AR") 162-172. Plaintiff alleges she became disabled on June 30, 2010, due to fibromyalgia, depression, COPD, and emphysema. *See* AR 162, 186. Plaintiff's application was denied upon initial administrative review and on reconsideration. *See* AR 82, 92. A hearing was held before ALJ Virginia M. Robinson on January 14, 2014, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 34.

On May 19, 2014, the ALJ found Plaintiff was not disabled within the meaning of Section 1614(a)(3)(A) of the Social Security Act. AR 27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 18, 2015, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On July 14, 2015, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for further proceedings, because the ALJ failed to properly evaluate the medical opinions of one of Plaintiff's treating physicians, Dr. Steve Lewis, M.D., and one of Plaintiff's examining psychologists, Dr. Christopher Portman, Ph.D. Dkt. 16, p. 1.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## DISCUSSION

I.   Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

**A. Standard**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

 1         **B.  Application of Standard**

 2             1. *Christopher Portman, Ph.D.*

 3     Dr. Portman performed a psychological evaluation of Plaintiff on April 16, 2013. AR

 4 431. During the examination, Plaintiff reported symptoms of panic and depression. AR 428-29.

 5 Plaintiff also reported a fear of being in cars, sporadic eating, and insomnia, as well as the fact

 6 she does not go out or drive. AR 428. On mental status examination, Dr. Portman documented

 7 shabby appearance and grooming, sad and somewhat anxious mood, and tearful affect with

 8 reasonable eye contact. AR 431. Dr. Portman found Plaintiff's remote memory was

 9 compromised as Plaintiff could only recall two of four words after five minutes, and found

10 Plaintiff had difficulty concentrating as Plaintiff struggled with serial sevens and was only able

11 to spell "world" backwards at a very slow pace. AR 431. Dr. Portman also found Plaintiff had an

12 incomplete fund of knowledge, was unable to interpret adages, and had impaired insight and

13 judgment. AR 431. However, Dr. Portman also found Plaintiff's perception, thought process and

14 content, and orientation were within normal limits. AR 431.

15     Dr. Portman diagnosed Plaintiff with Post-Traumatic Stress Disorder ("PTSD") with

16 anxiety problems including panic with agoraphobia. AR 429. As a result of Plaintiff's

17 impairments, Dr. Portman opined Plaintiff would be severely limited in her ability to:

18 understand, remember, and persist in tasks by following detailed instructions; perform activities

19 within a schedule, maintain regular attendance, and be punctual within customary tolerances

20 without special supervision; and complete a normal workday and work week without

21 interruptions from psychologically based symptoms. AR 430. Dr. Portman also opined Plaintiff

22 had marked limitations in nine other areas, including her ability to: understand, remember, and

23 persist in tasks by following very short and simple instructions; learn new tasks; perform routine

24

tasks without special supervision; adapt to changes in a routine work setting; make simple work-related decisions; ask simple questions or request assistance; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and set realistic goals and plan independently. AR 430.

The ALJ gave Dr. Portman's opinion little weight for the following four reasons:

> [1] Dr. Portman's opinion is based primarily on the claimant's self-report of symptoms. However, the claimant's reports of symptoms are not consistent with the severity opined by Dr. Portman. [2] The claimant has not sought treatment, and [3] this examination was done specifically for the purpose of obtaining benefits. [4] Dr. Portman's opinion is not based on objective testing.

AR 21 (numbering added). Plaintiff argues these were not specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Portman's opinion. The Court agrees.

As a threshold matter, the Court notes the ALJ's reasons for giving little weight to Dr. Portman's opinions are bare, conclusory statements offered entirely without support in the record. In order to reject the opinion of a treating or examining physician, an ALJ must do more than state his or her conclusions; he or she must set forth their own interpretations and explain why they, rather than the doctors' are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). *See Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ's failure to do so here was error. *See, e.g.*, *McAllister v. Sullivan*, 888 F.2d 599, 602-03 (9th Cir. 1989) (finding similar reasoning for rejecting a treating physician's opinion was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Moreover, the reasons offered by the ALJ for rejecting Dr. Portman's opinion are all legally erroneous or unsupported by substantial evidence. First, the ALJ found Dr. Portman's opinion was based primarily on the claimant's self report of symptoms. An "ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have

been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, Dr. Portman did more than rely on Plaintiff's self-reports; in fact, Dr. Portman conducted a clinical interview and mental status examination where he documented deficits across a range of areas, including remote memory, fund of knowledge, concentration, capacity for abstract thought, and diminished insight and judgment. AR 431. As discussed more fully below, these components of Dr. Portman's examination are objective testing and are independent of Plaintiff's subjective self-reports. Thus, the ALJ's finding Dr. Portman's opinion is based primarily on the claimant's self reports is unsupported by substantial evidence in the record as a whole.[1]

Second, the ALJ's finding the "claimant has not sought treatment" for her mental disorders is unsupported by substantial evidence in the record. In fact, the record reflects Plaintiff routinely sought counseling through the offices of her primary care physician, Dr. Lewis. AR 471, 473, 513. Dr. Lewis' records also reflect Plaintiff exhibited paranoia and distrust in her counselors. AR 471, 495. Dr. Lewis also managed Plaintiff's medication for her mental health issues, and documented adverse reaction to several drugs. *See* AR 473, 477, 495. In light of these records clearly indicating Plaintiff sought treatment for her mental health disorders (and in some cases, that her treatment was inhibited or interrupted as a result of these disorders), the ALJ's finding Plaintiff did not seek mental health treatment is unsupported by substantial evidence.

---

[1] The ALJ goes on to state Dr. Portman's opined limitations are more severe than Plaintiff's self-reports would suggest. However, as Dr Portman based his opinion on more than Plaintiff's self-reports, the Court need not address this issue.

ORDER ON PLAINTIFF'S COMPLAINT - 6

Third, the ALJ erred by rejecting Dr. Portman's opinion because his examination was conducted "for the purpose of obtaining benefits." AR 21. "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." *Lester*, 81 F.3d at 832. Absent some evidence of "actual improprieties" in Dr. Portman's evaluation—which the ALJ does not cite, nor can the Court find—it is error for an ALJ to reject an examining physician or psychologist's opinion simply because the opinion was rendered in the context of an evaluation for some form of disability benefits. *Id.* (quoting *Ratto v. Secretary*, 839 F.Supp. 1416, 1426 (D. Or. 1993).

Fourth, the ALJ's finding Dr. Portman's opinion was not based on objective testing misunderstands the nature of Dr. Portman's mental status examinations and his clinical observations. As this Court has previously noted:

> [E]xperienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination [MSE] allows the organization, completion and communication of these observations. . . . Like the physical examination, the mental status examination is termed the *objective* portion of the patient evaluation."

*Blessing v. Astrue*, 2013 WL 316153, at *6 (W.D. Wash. 2013) (*quoting* Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination, 3-4 (Oxford University Press 1993). "Anyone can have a conversation with a patient, but appropriate knowledge, vocabulary, and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, at 3. The ALJ's finding Dr. Portman's examination was not based on objective testing disregards the objective components of Dr. Portman's evaluation; thus, the ALJ's finding on this point was unsupported by substantial evidence.

1       Because the ALJ did not provide specific and legitimate reasons for giving little weight to
2  Dr. Portman's opinion, the ALJ erred by giving Dr. Portman's opinion little weight.
3              2. *Steve Lewis, M.D.*
4       Plaintiff's treating physician, Dr. Lewis, has treated Plaintiff for a variety of physical and
5  mental health conditions since 2008, including depression, bipolar disorder, insomnia, GERD,
6  abdominal pain, and chronic pain. AR 473, 479 513, 515, 530, 568. On January 21, 2014, Dr.
7  Lewis completed two residual functional capacity assessments of Plaintiff: one pertaining to her
8  mental residual functional capacity and one pertaining to her physical residual functional
9  capacity. AR 470-561, 569, 573.
10      In terms of mental limitations, Dr. Lewis opined Plaintiff would have extreme limitations
11 (defined as a "major limitation" with "no useful ability to function") in her ability to: maintain
12 attention and concentration for extended periods and to complete a normal workday and
13 workweek without interruptions from psychologically based symptoms, and; perform at a
14 consistent pace without an unreasonable number and length of rest periods. AR 567-68. Dr.
15 Lewis also opined Plaintiff would have marked limitations in ten areas, including her ability to:
16 understand, remember, and carry out detailed instructions; perform activities within a schedule,
17 maintain regular attendance, and be punctual within customary tolerances; the ability to work in
18 coordination or proximity to others without being distracted by them; interact appropriately with
19 the general public, and; respond appropriately to changes in the work setting. AR 567-68. Dr.
20 Lewis based his opinion on Plaintiff's longitudinal treatment history, as well as clinical and
21 psychological findings. AR 568, 573. Dr. Lewis also noted he based his opinion of Plaintiff's
22 mental impairments, in part, on "her response or lack of response to treatment" and "her limited
23 coping abilities." AR 568. Dr. Lewis also found objective support for Plaintiff's complaints of
24

pain in her reduced range of motion, tenderness to palpitation, and a May 14, 2012 MRI of her spine which revealed "bulging discs." AR 571.

In terms of physical limitations, Dr. Lewis opined Plaintiff would be unable to lift more than 25lbs at a time and fewer than ten pounds on an occasional basis. AR 570. Dr. Lewis also opined Plaintiff would be able to sit for no more than four hours in an eight hour workday, stand or walk for no more than four hours in an eight hour workday, would have limited use of her hands and arms, and would be able to bend, squat, stoop, crouch, crawl, kneel, climb, and reach on no more than an occasional basis. AR 570-71. Dr. Lewis opined Plaintiff would require a cane to ambulate. AR 573.

The ALJ gave Dr. Lewis' mental residual functional capacity assessment little weight for three reasons:

> [1] His opinion is inconsistent with the medical evidence of record. [2] It relies heavily on the claimant's inaccurate and incomplete reports of symptoms. For example, the claimant reports she is afraid to leave home; however, the claimant reports walking three times a week. [3] Although he indicates the claimant has failed to respond to treatment, the record does not show significant treatment.

AR 22 (numbering added). As for Dr. Lewis' physical residual functional capacity assessment, the ALJ found Dr. Lewis' opinions concerning Plaintiff's lifting restrictions to be consistent with the medical evidence, but otherwise gave the opinion little weight for one reason:

> [T]he remaining limitations are overstated. They are not consistent with the claimant's reported activities. For example, the claimant is able to use the computer for large portion [sic] of the day, she cooks, cleans, and does laundry.

AR 25. Plaintiff argues these were not legally sufficient reasons to discount the opinion of a treating physician, and the Court agrees. The Court will first address the ALJ's reasons for discounting Dr. Lewis' opined mental limitations, followed by the ALJ's reason for discounting Dr. Lewis' opined physical limitations.

a. Mental Limitations

As with Dr. Portman, several of the ALJ's reasons for discounting Dr. Lewis' mental residual functional capacity assessment are couched as conclusory statements without any explanation or citation to the record. *See Garrison,* 759 F.3d at 1012; *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). *See, e.g.*, *McAllister*, 888 F.2d at 602-03. Importantly, Dr. Lewis was Plaintiff's treating physician. An ALJ must give "specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be *sufficiently specific* to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling ("SSR") 96-2P, *available at* 1996 WL 374188 (emphasis added). The ALJ's unsupported, conclusory statements do not satisfy this standard. *See, e.g.*, *McAllister*, 888 F.2d at 602-03 (citing *Embrey*, 849 F.2d at 421).

Moreover, the ALJ's proffered reasons are legally insufficient and unsupported by substantial evidence. First, the medical evidence of record concerning Plaintiff's mental health reflects Plaintiff has, in fact, been treated by Dr. Lewis and his medical staff on at least fifteen occasions over several years for her mental health issues. *See* AR 353, 355, 361, 363-64, 439, 449, 471, 473-74, 477, 479, 489, 491, 495-97, 500, 504, 508, 513, 515, 541, 557. Plaintiff's treatment regimen included medication management and ongoing counseling. *See* AR 471, 473, 477, 495, 500, 513. This treatment record directly contradicts the ALJ's finding Plaintiff did not receive significant treatment for her mental health issues, thus rendering the ALJ's finding unsupported by substantial evidence.

Second, the ALJ's finding Dr. Lewis' opinion was inconsistent with the medical evidence of record is also insufficiently specific and unsupported by substantial evidence. Throughout her

1  treatment with Dr. Lewis, Plaintiff has exhibited varying degrees of psychological distress,

2  ranging from depressed mood to paranoid thoughts and an apparent suicide attempt. *See* AR 471,

3  495, 500. Dr. Lewis' opinion is also consistent with Dr. Portman's opinion, which he cited as

4  part of the basis for his opinion. AR 568. Without additional explanation from the ALJ as to

5  what, if anything, is inconsistent between Dr. Lewis' opinion and the medical record, the Court

6  cannot find this to be a specific and legitimate reason, supported by substantial evidence, for

7  discounting Dr. Lewis' opinion. *See* SSR 96-2P, *available at* 1996 WL 374188.

8  Third, the ALJ's conclusion Dr. Lewis based his opinion on Plaintiff's "inaccurate and

9  incomplete" report of symptoms is unsupported by substantial evidence. Dr. Lewis specifically

10  indicated he based his opinion on his longitudinal treatment history with Plaintiff, clinical and

11  psychological findings, Plaintiff's lack of response to mental health treatment, her limited coping

12  abilities, and Dr. Portman's evaluation report. AR 568, 573. Further, Dr. Lewis' treatment notes

13  are included in the record, and corroborate his ongoing treatment of Plaintiff's mental health

14  issues. *See* AR 470-562. *C.f. Garrison*, 759 F.3d at 1013 (noting a medical opinion based on

15  treatment notes and personal experience is "entitled to weight that an otherwise unsupported and

16  unexplained check-box form would not merit"). The ALJ does not explain his conclusion Dr.

17  Lewis' opinions were based more heavily on Plaintiff's self reports, and the record does not

18  support this conclusion. *See Ghanim,* 763 F.3d at 1162.[2]

---

[2] The ALJ does cite to one example of an alleged inconsistency between Plaintiff's testimony and Dr. Lewis' opinion. Specifically, the ALJ noted: "the claimant reports she is afraid to leave home; however, the claimant reports walking three times a week." AR 22. Notably, Dr. Lewis' notes reflect Plaintiff walked several times per week in August of 2012, but walked "0" times per week as of December, 2013. AR 85, 315, 472. Plaintiff also testified at the hearing she didn't feel safe outside of her home. AR 46. Even assuming these items in the record were inconsistent, there is no indication Dr. Lewis relied more heavily on Plaintiff's self-reports and subjective statements rather than his own independent clinical findings in formulating his opinion.

b.  Physical Limitations

As to Dr. Lewis' opinion concerning Plaintiff's physical residual functional capacity, the ALJ found Plaintiff's reported activities were inconsistent with Dr. Lewis' opinion. Specifically, the ALJ found Plaintiff's ability to use a computer for a large period of time, cook, clean, and do laundry to be inconsistent with Dr. Lewis' opinion. Inconsistency between a claimant's daily activities and a medical opinion is a specific and legitimate reason to discount that opinion. *C.f.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding inconsistency between a claimant's testimony and their activities of daily living is an acceptable basis to find a claimant not fully credible). However, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan*, 260 F.3d at 1050).

Importantly, Plaintiff's activities are, in fact, consistent with Dr. Lewis' opinion. For example, Dr. Lewis opined Plaintiff would be able to sit for no more than one hour at a time in an eight-hour workday, and could sit for up to four hours in an eight-hour workday. AR 570. Dr. Lewis also opined Plaintiff would be unable to use her hands for gross and fine repetitive movements. AR 570. This is consistent with Plaintiff's testimony concerning her computer use, as she indicated she can use her computer for no more than one-half hour to an hour, is unable to move the computer mouse due to hand cramping, and only plays one specific computer game as it only requires her to "click a button." AR 40. *See also* AR 38. As for the other activities cited by the ALJ, they are also not actually inconsistent with Dr. Lewis' opined limitations. *See* AR 194, 215 (reflecting Plaintiff is unable to cook, clean, and do laundry without assistance, and is unable to stand for very long); AR 570-71 (Dr. Lewis' opinion Plaintiff can stand for no more than one hour at a time and more than four hours in an eight hour period, and is only able to

occasionally bend, squat, stoop, crouch, crawl, kneel, and reach). Therefore, the Court concludes the ALJ's finding Plaintiff's activities of daily living were inconsistent with Dr. Lewis' opinion is unsupported by substantial evidence.

Because the ALJ failed to provide specific and legitimate reasons for discounting Dr. Lewis' opinion on both the mental and physical limitations, the ALJ erred by giving Dr. Lewis' opinion little weight.

## CONCLUSION

Based on the foregoing reasons, the Court finds the ALJ erred by failing to properly evaluate Dr. Portman and Dr. Lewis' opinions. Therefore, the Court orders this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the medical opinion evidence, re-evaluate Plaintiff's residual functional capacity, and proceed on to Step Four and/or Step Five of the sequential evaluation as appropriate. The ALJ should also develop the record as needed. Judgment should be for Plaintiff and the case should be closed.

Dated this __ day of [Pick the date].

David W. Christel
United States Magistrate Judge